UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WORLD LEBANESE CULTURAL UNION, INC., a Massachusetts corporation,<br><br>       Plaintiff,<br><br>   vs.<br><br>WORLD LEBANESE CULTURAL UNION OF NEW YORK, INC., a New York corporation,<br><br>       Defendant. | Case No: C 11-01442 SBA<br><br>**ORDER**<br><br>Dkt. 9 |

Plaintiff World Lebanese Cultural Union, Inc. ("Plaintiff") filed the instant action against Defendant World Lebanese Cultural Union of New York, Inc. ("Defendant") seeking declaratory and injunctive relief for alleged infringement of Plaintiff's registered trademark, "World Lebanese Cultural Union" ("the Mark"). The parties are presently before the Court on Defendant's Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction, Improper Venue, and Failure to State a Cause of Action. Dkt. 9. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES Defendant's motion to dismiss, and, in the interests of justice, TRANSFERS the action to the Central District of California, pursuant to 28 U.S.C § 1406(a). The Court, in its discretion, finds this matter suitable for resolution without oral argument. Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I. BACKGROUND

### A. FACTUAL SUMMARY

The World Lebanese Cultural Union ("WLCU-International") is a Beirut-based, "non-religious, non-political, non-sectarian and non-profit organization" founded in 1960 "as the official representative of Lebanese emigrants living outside of Lebanon." Compl. ¶ 8. The WLCU-International is the "international umbrella organization" of Plaintiff. Id.

In 1995, the WLCU-International split into "two factions" on an international level. Id. ¶ 10. In the United States, the WLCU-International continued to operate exclusively through Plaintiff. Id. Elsewhere, the "rival international organization" continued to operate under the name, "World Lebanese Cultural Union," the same name used by Plaintiff. Id. ¶ 11. Though active in Lebanon, the rival organization has been inactive in the United States. Id.

Prior to the 1995 split, Mr. Atef Eid ("Eid") was affiliated with certain United States and global operations of WLCU-International, but was later ousted from the organization and thereafter had no affiliation with either the WLCU-International or the rival organization. Id. ¶ 13. In 2005, however, Eid became involved with the rival organization and both decided to return to active operation in the United States. Id. Eid then "re-registered" the name "World Lebanese Cultural Union of New York, Inc." for a corporation "that had long been dormant as a purported affiliate of the Lebanese-based rival international organization that had long ceased to operate in the United States." Id.

At some point after 2005, the rival organization ousted Eid. Id. However, in 2010, Eid and unspecified others registered the name "World Lebanese Cultural Union of New York, Inc." (i.e., the Defendant herein) with the California Secretary of State doing business under the name "'Official' World Lebanese Cultural Union." Id.[1] Nevertheless, Plaintiff alleges that since 2007, Defendant's activities in the United States under the Mark have been "de minimus." Id.

---

[1] It is unclear from the pleadings whether the Defendant is affiliated with the rival organization.

In or around October 2010, Defendant began advertising a Lebanese Independence Day event in Glendora, California, in Los Angeles County.  Id. ¶ 14.  Defendant advertised the event using the disputed Mark.  Id.  In response, on November 12, 2010, Plaintiff sent a cease and desist letter to Defendant's agent in California demanding that Defendant cease using Plaintiff's Mark to promote the event.  Id. ¶ 15 & Ex. 2 at 16-17.   Defendant allegedly ignored the letter and held the event as scheduled.  Id.

On or around February 2, 2011, Defendant sent a cease and desist letter to Plaintiff, and the President of its affiliated California corporation, Mr. Anise Garabet.  Id. ¶ 16.  Defendant claimed it possessed common law rights in the Mark and alleged that Plaintiff's use of the Mark, in fact, was in violation of state and federal law.  Id. ¶16 & Ex. 3 at 19-21.

On March 7, 2011, Plaintiff registered the Mark and accompanying symbol with the U.S. Patent and Trademark Office ("USPTO") under registration number 3065672.  Id. Ex. 1.  On or around January 26, 2011, Defendant filed a "Petition to Cancel" registration number 3065672 in an effort to invalidate Plaintiff's claim upon the Mark.  Id. ¶ 17.  That proceeding is currently pending before the USPTO.  Id.

### B. PROCEDURAL HISTORY

On March 25, 2011, Plaintiff filed the instant action, alleging five claims for relief, as follows: (1) trademark infringement; (2) false designation of origin and false advertising; (3) violation of California Business & Professions Code § 17200 et seq; (4) common law unfair competition; and (5) declaratory judgment.  Id. ¶¶ 18-39.  The crux of Plaintiff's claims is that Defendant has engaged in willful trademark infringement by using the Mark in connection with its activities in California.  Id. ¶ 1.

On May 5, 2011, Defendant filed a Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue and Failure to State a Cause of Action, pursuant to Federal Rule of Civil Procedure 12(b)(2), 12(b)(3) and 12(b)(6), respectively.  Dkt. 9.  Defendant argues that the Court lacks personal jurisdiction over Defendant, which is based in New York and lacks minimum contacts with this District.  In addition, Defendant contends that the Southern District of New York, not the Northern District of California, is the

appropriate venue for this action. Plaintiff opposes Defendant's motion, but argues that the action is properly venued in this Court or the Central District of California, where Defendant held its event. The matter has been fully briefed and is ripe for adjudication.[2]

## II.   DISCUSSION

### A.   MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

#### 1.   Legal Standard

District courts have the authority to dismiss an action for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "Where, as here, the existence of personal jurisdiction is challenged and the defendant appears specially to contest its presence in the jurisdiction, the plaintiff has the burden to come forward with some evidence to establish jurisdiction." Dist. Council No. 16 of Int'l Union of Painters & Allied Trades v. B & B Glass, Inc., 510 F.3d 851, 855 (9th Cir. 2007). "The court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues." See Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001). "When a district court acts on a defendant's motion to dismiss without holding an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." Id. (citing Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995)). The Court accepts as true any uncontroverted allegations in the complaint and resolves any conflicts between the facts contained in the parties' evidence in the plaintiff's favor. Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1119 (9th Cir. 2002) ("Glencore"). However, for personal jurisdiction purposes, a court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." Alexander v. Circus Circus Enters., Inc., 972 F.2d 261, 262 (9th Cir. 1992) (internal quotations omitted).

---

[2] Plaintiff has objected to certain of the evidence submitted by Defendant along with its reply brief. Dkt. 26. Because the Court does not rely on any of the disputed evidence, Plaintiff's objections are overruled as moot.

Personal jurisdiction over a nonresident, corporate defendant is analyzed under a two-step inquiry. Chan v. Soc'y Expeditions, Inc., 39 F.3d 1398, 1404 (9th Cir. 1994). First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute. Id. Second, the exercise of jurisdiction must comport with federal due process requirements. Id. at 1404-05. Because "California's long-arm permits the exercise of jurisdiction to the limits of due process," the Court's analysis of personal jurisdiction need only consider "whether the exercise of jurisdiction over [the defendant] comports with due process." Glencore, 284 F.3d at 1123. Constitutional due process requires that a defendant have sufficient "minimum contacts" with the forum state. Int'l Shoe Corp. v. Washington, 326 U.S. 310, 316 (1945); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985). The minimum contacts must be such that a defendant "should reasonably anticipate being haled into court" in the forum. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

Under the minimum contacts analysis, jurisdiction may either be "general" or "specific." Doe, 248 F.3d at 923. General jurisdiction depends on the defendant's "substantial, continuous and systematic" contacts with the forum, such that "even if the suit concerns matters not arising out of his contacts with the forum," he can still be haled into court there. Glencore, 284 F.3d at 1123. In contrast, specific jurisdiction exists "where the cause of action arises out of or has a substantial connection to the defendant's contacts *with* the forum." Id. (emphasis added). Here, Plaintiff contends that Defendant is subject to both general and specific jurisdiction. Pl.'s Opp'n at 8, Dkt. 17. The Court will address each claim seriatim.

### 2. General Jurisdiction

A court can exercise general jurisdiction over a defendant when the defendant maintains "continuous and systematic" contacts with the forum state. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). The standard for establishing general jurisdiction is high, and requires that a defendant's contacts be the "kind of activity that *approximates physical presence* within the state's borders." Bancroft

& Masters v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000) (emphasis added). If a "nonresident defendant's activities within a state are 'substantial' or 'continuous and systematic,' there is a sufficient relationship between the defendant and the state to support jurisdiction *even* if the cause of action is unrelated to the defendant's forum activities." Data Disc, Inc. v. Systems Tech. Assocs., Inc., 557 F.2d 1280, 1287 (9th Cir. 1977) (citing Perkins v. Benguet Consol. Mining Co., 342 U.S. at 446-47) (emphasis added). In assessing the presence of general jurisdiction, courts have considered "whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1172 (9th Cir. 2006). (citing Bancroft & Masters, 223 F.3d at 1086) (internal quotations and citation omitted).

   Plaintiff contends that Defendant's continuous and systematic contacts with California are demonstrated by the fact that it registered with California's Secretary of State to conduct business in California and has identified an agent for service of process. Pl.'s Opp'n at 11; Garbet Decl. Ex. 5, Dkt. 18-5. "[F]ederal courts must, subject to federal constitutional restraints, look to state statutes and case law in order to determine whether a foreign corporation is subject to personal jurisdiction in a given case because the corporation has appointed an agent for service of process." King v. Am. Family Mut. Ins. Co., 632 F.3d 570, 575 (9th Cir. 2011). California courts, however, have declined to find that a party has consented to a state's jurisdiction merely by appointing an in-state agent for service of process. See, e.g., DVI, Inc. v. Superior Court, 104 Cal. App. 4th 1080, 1095 (2002) (finding no personal jurisdiction even though the defendant company registered to do business in California, maintained a California agent for service of process, and had two officers residing in California); Gray Line Tours v. Reynolds Elec. & Eng'g Co., 193 Cal. App. 3d 190, 193-95, (1987) (holding that designation of an agent for service of process and qualification to do business in California alone do not constitute grounds for general jurisdiction). As such, the mere fact that Defendant has registered to do business in this

State and held a single event in Southern California are insufficient to demonstrate that Defendant has consented to the personal jurisdiction of this Court.

Next, Plaintiff relies on a letter sent by Eid, President of Defendant, to Plaintiff in which he states that Defendant has been "active within several states *including the State of California*" since 1973 and that the "[w]idespread use of the WLCU name and trademark has been made for the last 37 years by our corporation throughout the United States, *including the State of California*." Garabet Decl. Ex. 4 (emphasis added), Dkt. 18-4. Plaintiff argues that Eid's statements constitute an admission that Defendant conducts business in California. Pl.'s Opp'n at 12. This argument is unpersuasive. The general jurisdiction inquiry looks, not at the mere existence of Defendant's contacts, but rather, at the *nature and extent* of such contacts. See Tuazon, 433 F.3d at 1172. Indeed, Plaintiff admits that it has *no* evidence concerning the extent and nature of Defendant's activities in California. Pl.'s Opp'n at 11. Moreover, Plaintiff overlooks its allegations that Defendant's activities throughout the United States have been "de minimus." See Compl. ¶ 13. In sum, the Court finds that Defendant's contacts with this forum are too tenuous to support a finding of general jurisdiction.

### 2. Specific Jurisdiction

The remaining question is whether there is a sufficient foundation upon which to find that the Court has specific jurisdiction over Defendant. The exercise of specific jurisdiction is dependent on whether the claims at issue in the case arise from the defendant's forum-related contacts. Rano v. Sipa Press, Inc., 987 F.2d 580, 587 (9th Cir. 1993). The Ninth Circuit applies a three-prong test for analyzing specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

>  (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006) (quoting Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004)). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." Schwarzenegger, 374 F.3d at 802 (citing Burger King, 471 U.S. at 476-78). Of the three prongs, the first "is the most critical." Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 416 (9th Cir. 1997).

### *a) Purposeful Direction*

The Ninth Circuit uses "the phrase 'purposeful availment,' in shorthand fashion, to include both purposeful availment and purposeful direction, . . . but availment and direction are, in fact, two distinct concepts." Schwarzenegger, 374 F.3d at 802. "A purposeful availment analysis is most often used in suits sounding in contract [while] [a] purposeful direction analysis… is most often used in suits sounding in tort." Id. "A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." Id. In contrast, the purposeful direction or "effects" test, which is derived from Calder v. Jones, 465 U.S. 783 (1984), requires "[a] showing that a defendant purposefully directed his conduct toward a forum state . . . usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." Schwarzenegger, 374 F.3d at 802.

Trademark and false advertising claims are akin to tort claims and are therefore analyzed under the purposeful direction test. See Panavision, 141 F.3d at 1320-21 (applying purposeful direction test in trademark dilution action). The purposeful direction test "requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely

to be suffered in the forum state." Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002). To satisfy the "expressly aimed" requirement, the plaintiff must demonstrate that the intentional act or acts were directed specifically at the forum in which the plaintiff resides. Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1130-31 (9th Cir. 2010) (express aiming requirement met where defendant law firm knew of plaintiff's existence, targeted plaintiff's business, and entered into direct competition with plaintiff by copying content from plaintiff's website to lure its clients).

Here, Plaintiff alleges that Defendant intentionally advertised its Independence Day event using the disputed Mark. Pl.'s Compl. ¶ 14. Defendant does not dispute that it targeted California residents—specifically, members of the local Lebanese community—in marketing the event. Rather, Defendant argues that the announcement was posted on Facebook as a "private" dinner, as opposed to a fundraiser. Def.'s Mot. at 6. Defendant fails to support this assertion with any evidence.[3] But even if it had, the fact remains that Defendant admittedly engaged in an intentional act which was expressly aimed at persons in California. Under controlling Ninth Circuit precedent, Defendant's conduct is sufficient to satisfy the first two elements of the purposeful direction test. Brayton Purcell LLP, 606 F.3d at 1130-31; see also Bancroft & Masters, 223 F.3d at 1087 (defining express aiming as "wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.").[4]

---

[3] With its reply, Defendant proffered evidence regarding the nature of the event. See Najm Reply Decl. ¶¶ 4-5, Dkt. 25. New evidence or analysis presented for the first time in a reply is improper and will not be considered. See Coleman v. Quaker Oats Co., 232 F.3d 1271, 1289 n.4 (9th Cir. 2000) ("[I]ssues cannot be raised for the first time in a reply brief."); Tovar v. U.S. Postal Serv., 3 F.3d 1271, 1273 n.3 (9th Cir. 1993) ("To the extent that the [reply] brief presents new information, it is improper.").

[4] Plaintiff's claims against Defendant arise out of the latter's use of the Mark to advertise the event. Though Defendant challenges whether such conduct is actionable, it does not dispute that Plaintiff's claims, as alleged, arise from Defendant's forum-related activities.

### *b)      Reasonableness*

Where, as here, the plaintiff's showing is sufficient to establish the purposeful availment and that the plaintiff's claims arise from defendant's forum-related activities, the burden then shifts to the Defendant to establish that the exercise of specific jurisdiction would nevertheless be unreasonable.  Boschetto v. Hansing, 539 F.3d 1011, 1016 (9th Cir. 2008).  The exercise of jurisdiction must "comport with fair play and substantial justice." Burger King, 471 U.S. at 477-478 (1985).  The defendant bears the burden of presenting a "compelling case that the exercise of jurisdiction would not be reasonable."  Menken v. Emm, 503 F.3d 1050, 1057 (9th Cir. 2007).

The reasonableness determination requires consideration of a number of factors: (1) the extent of the defendant's purposeful interjection into the forum state; (2) the burden on the defendant in defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.  Dole, 303 F.3d at 1114.  No single factor is dispositive.  Core-Vent Corp. v. Nobel Indus. AB, 11 F.3d 1482, 1488 (9th Cir. 1993).

Defendant argues, in an entirely conclusory manner, that litigating the action in California would be "unreasonable" because it is located in New York.  Def.'s Mot. to Dismiss at 8.  This contention is uncompelling.  Defendant's apparent inconvenience is insufficient to establish that the exercise of personal jurisdiction would be unreasonable. Defendant must instead "show that jurisdiction in California would make the litigation 'so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent.'"  Sher v. Johnson, 911 F.2d 1357, 1365 (9th Cir. 1990)

(quoting Burger King, 471 U.S. at 478). Defendant has made no showing in that regard.[5] The Court therefore finds that Defendant has failed to prove that the Court's exercise of jurisdiction over it would be unreasonable.

At bottom, the Court concludes that it has specific jurisdiction over Defendant, and thus, DENIES Defendant's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2). The Court now turns to Defendant's alternative motion to dismiss or transfer the instant action to the Southern District of New York, pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406.

### C. MOTION TO DISMISS OR TRANSFER FOR IMPROPER VENUE

#### 1. Legal Standard

Rule 12(b)(3) allows a defendant to challenge a complaint based on improper venue. In considering such a motion, "[the] pleadings need not be accepted as true, and facts outside the pleadings may be considered." Doe 1 v. AOL LLC, 552 F.3d 1077, 1081 (9th Cir. 2009). Once venue is challenged, plaintiff bears the burden of showing that venue is proper. Piedmont Label Co. v. Sun Garden Packing Co., 598 F .2d 491, 496 (9th Cir. 1979). If the court determines that venue is improper, it may dismiss the case, or, in the interest of justice, transfer it to any district in which it properly could have been brought. 28 U.S.C. § 1406(a); Dist. No. 1, Pac. Coast Dist. v. State of Alaska, 682 F.2d 797, 799 (9th Cir. 1982).

The federal venue statute, 28 U.S.C. § 1391(b), provides:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a

---

[5] Defendant also intimates that California has no interest in adjudicating the matter because the dispute purportedly arose "entirely in New York." Def.'s Mot. to Dismiss at 8. Setting aside Defendant's failure to provide support for these conclusory allegations, the Court disagrees that New York is the locus of the action. The Complaint expressly predicates its claims against Defendant on its use of the Mark to promote an event in California. Compl. ¶ 14.

judicial district in which any defendant may be found, if there is
no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). For venue purposes, a defendant corporation resides in "any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." Id. § 1391(c). In a state such as California that has multiple judicial districts, a corporation resides in "any judicial *district* in that State within which its contacts would be sufficient to subject it to personal jurisdiction *if that district were a separate State*." Id. (emphasis added).

### 2. Analysis

As discussed above, the Court has found that Defendant has sufficient contacts *with California* to support a finding of personal jurisdiction over the Defendant. However, the record demonstrates that Defendant's contacts arise from its Independence Day event in Glendora, California, which lies within the Central District of California. There is no allegation or evidence that Defendant has any contact with this District. See Avery Dennison Corp. v. Alien Tech. Corp., 632 F. Supp. 2d 700, 716 (N.D. Ohio 2008) ("The Court's analysis of whether the Northern District of Ohio is a proper venue thus excludes all of Alien's Ohio contacts situated in the Southern District of Ohio."); see also eBay Inc. v. Digital Point Solutions, Inc., 608 F. Supp. 2d 1156, 1162 (N.D. Cal. 2009) (finding venue over Defendants proper where they were "subject to personal jurisdiction because of the multiple alleged contacts with eBay's computer system in *this district*.") (emphasis added). Consequently, if the Northern District of California were a "separate state," Defendant would not be subject to personal jurisdiction here. See 28 U.S.C. § 1391(c).

The second basis for venue under § 1391(b) focuses on the district in which a "substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). Here, the event giving rise to Plaintiff's claims is the Independence Day dinner, which Defendant allegedly advertised utilizing Plaintiff's Mark. Compl. ¶ 14. Since persons living in or around Glendora are the persons most likely to have attended the

1 event, venue under § 1391(b)(2) is proper in the Central District of California, not the
2 Northern District of California. See Woodke v. Dahm, 70 F.3d 983, 985 (8th Cir. 1995)
3 ("The place where the alleged passing off occurred therefore provides an obviously correct
4 venue."); Cottman Transmission Sys. v. Martino, 36 F.3d 291, 295 (3rd Cir. 1994) (noting
5 that in a trademark infringement lawsuit, a "substantial part" of the events giving rise to the
6 claims occur in any district where consumers are likely to be confused by the accused
7 goods).

8 Having concluded that venue in this District is lacking, the final question for the
9 Court to consider is whether to dismiss or transfer the action. Under 28 U.S.C. § 1406, the
10 Court has discretion to dismiss or transfer the action in the interest of justice. See King v.
11 Russell, 963 F.2d 1301, 1304 (9th Cir. 1992). Defendant argues that the Court should
12 dismiss the action, or alternatively, transfer the action to the Southern District of New York
13 where it maintains its principal place of business. Def.'s Mot. at 3, 9. Plaintiff insists that
14 venue is proper in this District, but that if the Court disagrees, the matter should be
15 transferred to the Central District of California based on the fact that the event transpired in
16 that district. Pl.'s Opp'n at 16.

17 Venue in the Southern District of New York arguably would be proper given that
18 Defendant is incorporated in New York and maintains its principal place of business in that
19 judicial district. See 28 U.S.C. § 1391(b)(1). However, the interests of justice do not
20 warrant transferring venue there. Although Defendant may be located in New York, it is
21 clear that the events that form the basis of the instant action occurred in Glendora,
22 California. In a trademark infringement action, the "ultimate issue" is one of customer
23 confusion. See Am. Circuit Breaker Corp. v. Or. Breakers, Inc., 406 F.3d 577, 584 (9th
24 Cir. 2005). Thus, the more appropriate venue is where the confusion most likely occurred;
25 namely, Glendora, California, which lies in the Southern District of California. See Sykes
26 Lab., Inc. v. Kalvin, 610 F. Supp. 849, 860 n.8 (C.D. Cal. 1985) (observing that trademark
27 infringement occurs in the district "where the passing off occurs, i.e., where the deceived
28 customer buys the defendant's product in the belief that he is buying the plaintiff's"). In

addition, the Court affords some deference to Plaintiff's acknowledgment that the Central District of California is a suitable forum, particularly in light of the Court's determination that Defendant is subject to personal jurisdiction there. See Ravelo Monegro v. Rosa, 211 F.3d 509, 514 (9th Cir. 2000) (noting that a foreign plaintiff's choice of forum is entitled to some deference).

## III. CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1. Defendant's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction is DENIED.

2. Defendant's Rule 12(b)(3) motion to dismiss for lack of venue or alternatively to transfer venue to the Southern District of New York is DENIED. However, the Court finds that venue is proper in the Central District of California and that the interests of justice warrant transferring the instant action to that district pursuant to 28 U.S.C. § 1406(a).

3. Defendant's Rule 12(b)(6) motion is DENIED as moot.

4. The Clerk shall forthwith transfer the action to the Central District of California and close the file.

IT IS SO ORDERED.

Dated: October 28, 2011

                                                SAUNDRA BROWN ARMSTRONG
                                                United States District Judge